**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

ROMMEL SANTOS,
          *Defendant-Appellant.*

No. 06-10470

D.C. No.
CR-05-00201-GEB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted
March 12, 2008—San Francisco, California

Filed June 6, 2008

Before: Stephen Reinhardt, John T. Noonan, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Reinhardt

## COUNSEL

Daniel Broderick, Federal Defender; Ned Smock, Assistant Federal Defender, Office of the Federal Defender, Sacramento, California, for the defendant-appellant.

McGregor W. Scott, United States Attorney; Ellen V. Endrizzi, Assistant United States Attorney, Sacramento, California, for the appellee.

## OPINION

REINHARDT, Circuit Judge:

Rommel Santos appeals his sentence of 77 months following his plea of guilty to possession of stolen mail, possession and utterance of a forged security, and conspiracy. The

charges stemmed from Santos's involvement in a counterfeit checking scheme in which he and his co-conspirator used checks stolen from the mail as templates to produce counterfeit checks, which they would then recruit other individuals to cash. Santos argues that the district court erred in using the total face value of the stolen checks, rather than the counterfeit checks, to determine intended loss for the purposes of a sentencing enhancement under § 2B1.1(b)(1) of the United States Sentencing Guidelines ("U.S.S.G."). Adopting the approach of the Eleventh Circuit in *United States v. Grant*, 431 F.3d 760 (11th Cir. 2005), we hold that, in cases such as this, a district court may reasonably infer, absent a showing to the contrary, that the defendant intended to cause loss up to the full face value of the stolen checks. Because the district court did not clearly err in finding that Santos intended to cash counterfeit checks up to the face amount of the stolen checks, we affirm its application of a 12-level enhancement under § 2B1.1(b)(1)(G).[1]

## I. Background

In August 2004, co-defendant Kevin Eisert delivered to Santos a batch of mail he had recently stolen, which included bank statements and checks from a number of businesses. Santos brought the stolen checks to an individual known as "Cowboy," who at various times made counterfeit checks from them. Santos and Cowboy would then recruit other individuals to cash the counterfeit checks, offering the recruits 50% of the amount cashed and keeping 50% for themselves to be split evenly between them.

A month later, Santos and Cowboy recruited a woman named Laurane Ivey to cash a counterfeit check. The three

---

[1]Santos also challenges the district court's application of a two-level aggravating role enhancement under U.S.S.G. § 3B1.1(c). We dispose of that issue in a separate memorandum disposition, filed concurrently with this opinion.

drove to an apartment complex, where Cowboy created a check in Ivey's name. Ivey then drove both men to a check cashing store, where she was arrested attempting to cash the check. Cowboy and Santos fled the scene. In a search of Ivey's trunk, the police discovered stolen mail, counterfeit checks, incomplete counterfeit ID's, and Cowboy's computer and check-production equipment, all of which Cowboy and Santos had placed there before leaving the apartment complex. Ivey identified Santos from one of the ID's found in the trunk. He was arrested several weeks later and gave a full *Mirandized* confession to the arresting officers.[2] He also consented to a search of his van, where officers discovered more stolen mail and counterfeit checks.

Santos pled guilty to conspiracy, possession of stolen mail, and possession and utterance of a forged security. At his sentencing hearing, Santos challenged the Presentence Report's ("PSR") recommendation of a 12-level enhancement pursuant to § 2B1.1(b)(1)(G) for an intended loss of more than $200,000 but not more than $400,000. The PSR calculated Santos's intended loss to be approximately $295,000, which comprised the total face value of both the stolen checks and the counterfeit checks recovered by the police. Santos objected to the inclusion of the stolen checks in the loss calculation, arguing that he and his cohorts never intended to cash the stolen checks but only to use them to obtain the information necessary to create counterfeit checks. Thus, he argued, the intended loss calculation should include only the face value of the counterfeit checks.[3] The government, in turn, argued that the intended loss should include the face value of both the stolen checks and the counterfeit checks because all of the checks were potentially negotiable and Santos's continued possession of them evinced an intent to cash them.

---

[2]Eisert had been arrested previously when he attempted to cash a counterfeit check at Wal-Mart. Cowboy was never apprehended.

[3]The counterfeit checks recovered totaled $54,464.65, which would have yielded a 6-level increase under § 2B1.1(b)(1)(D).

The district court followed neither Santos's nor the government's recommendations for calculating intended loss.[4] Rather, the district court inferred from the evidence—specifically, the facts that all of the checks recovered were "potentially negotiable," that Santos and Cowboy "had the materials and equipment for counterfeiting checks," and that "their scheme included recruiting people who could cash them"—that Santos intended "to cash as many counterfeit checks as could be cashed, at least until the full face value of the stolen checks was obtained." The district court further explained that the "only evidence indicating Santos did not intend to take the full face value of the [stolen] checks . . . , if he could have done so under the scheme, is his own testimony, which I do not credit on this point."[5] Thus, it concluded, "it is reasonable to estimate an intended loss of $229,000," the face value of the stolen checks. On the basis of this calculation, the district court increased Santos's base offense level by 12 levels pursuant to § 2B1.1(b)(1)(G). Santos timely appealed.

## II. Standard of Review

We review a district court's method of calculating loss *de novo*. *United States v. Hardy*, 289 F.3d 608, 613 (9th Cir. 2002); *United States v. W. Coast Aluminum Heat Treating Co.*, 265 F.3d 986, 990 (9th Cir. 2001). We review the district court's determination of the amount of loss for clear error. *United States v. Zolp*, 479 F.3d 715, 718 (9th Cir. 2007); *West Coast Aluminum*, 265 F.3d at 990.

---

[4]Nevertheless, the district court's loss calculation resulted in the same offense level increase as would have occurred had it followed the government's recommendation, as both amounts were at least $200,000 but less than $400,000.

[5]The district court was referring to Santos's testimony at an evidentiary hearing, held prior to the sentencing hearing, at which he stated that he and his cohorts intended to take only about $2,000 to $3,000 from each account for which they had bank information because any higher amount would have drawn attention to them.

## III.  Discussion

The sentencing guideline governing fraud and theft offenses provides for incremental increases in the defendant's offense level based upon the amount of loss. *See* U.S.S.G. § 2B1.1(b)(1). The commentary accompanying this provision defines "loss" as "the greater of actual or intended loss," *id.* § 2B1.1 cmt. n. 3(A), with "actual loss" defined as "the reasonably foreseeable pecuniary harm that resulted from the offense," *id.* § 2B1.1 cmt. n.3(A)(i), and "intended loss" defined as "the pecuniary harm that was intended to result from the offense," including "intended pecuniary harm that would have been impossible or unlikely to occur," *id.* § 2B1.1 cmt. n.3(A)(ii). The government bears the burden of proving loss for the purposes of § 2B1.1 by a preponderance of the evidence. *United States v. Zuniga*, 66 F.3d 225, 228 (9th Cir. 1995). However, the district court is not required to calculate loss "with absolute precision," *Zolp*, 479 F.3d at 719, but "need only make a reasonable estimate of the loss," U.S.S.G. § 2B1.1 cmt. n.3(C). There is no dispute in this case that the intended loss was greater than the actual loss; the sole question, therefore, is the amount of intended loss.

**[1]** Santos argues that the district court erred in basing its intended loss calculation on the face value of the stolen checks, rather than on the counterfeit checks recovered. Whether a district court may use the face value of stolen checks in estimating the intended loss of a counterfeit scheme is a matter of first impression in this circuit. The Eleventh Circuit has decided a case directly on point, however, and the Third Circuit has considered a case in analogous circumstances. We agree with the approach taken by those circuits.

**[2]** In *United States v. Grant*, 431 F.3d 760 (11th Cir. 2005), the defendant was convicted of participating in a scheme essentially identical to Santos's—the only difference was that Grant's scheme involved using photocopies of real corporate checks as templates for counterfeiting, whereas

Santos and his associates possessed the stolen checks themselves. *Id.* at 761, 763 n.4. Like Santos, Grant objected to the district court's inclusion of the photocopied checks in the calculation of intended loss. *Id.* at 761. The Eleventh Circuit found that the evidence presented—namely, that Grant admitted that the purpose of the photocopied checks was for use as templates for counterfeiting, that the photocopies provided Grant information about the companies' account balances, and that the police had "seized numerous blank counterfeit checks and several boxes of check stock paper from Grant's apartment," *id.* at 764—all "circumstantially support[ed] the conclusion Grant intended to utilize the full face value appearing on the photocopies of the . . . checks," *id.* Furthermore, Grant "fail[ed] to proffer any evidence indicating his intent to use less than the full face value of the stolen corporate checks." *Id.* at 765. Thus, the court concluded, the district court did not clearly err in finding that Grant intended to take up to the full face value of the stolen checks. Summarizing its rule, the Eleventh Circuit stated:

> To be clear, we hold when an individual possesses a stolen check, or a photocopy of a stolen check, for the purpose of counterfeiting, the district court does not clearly err when it uses the full face value of that stolen check in making a reasonable calculation of the intended loss. Although a district court cannot equate the full face value of stolen checks with intended loss as a matter of law in every case, it can still find a defendant intended to utilize the full face value of stolen checks. Where the Government presents evidence indicating the defendant intended to utilize the full face value of the checks, and the defendant fails to present countervailing evidence, a district court is especially justified in including the checks' full face value in its intended loss calculation.

*Id.*

**[3]** The Eleventh Circuit in *Grant* relied in part on the Third Circuit's decision in an analogous case, *United States v. Geevers*, 226 F.3d 186 (3d Cir. 2000), which we also consider instructive. Geevers's conviction stemmed from a check-kiting scheme in which he would open a new bank account with an invalid check, then withdraw a portion of the deposit before the bank discovered that the funds were not backed. *Id.* at 188-89. Geevers challenged the district court's use of the total face value of the deposited checks in calculating the intended loss, arguing that he did not intend to withdraw the full amount because he knew that he could not have succeeded in doing so, and that the government did not prove that he intended to take the full amount. *Id.* at 189. The Third Circuit found that the district court was justified in inferring that Geevers "would likely have taken the full amount of the deposited checks if that were possible." *Id.* at 193. It explained:

> To assume that Geevers did not want it all is to assume that had one of the banks somehow failed to detect his fraud and started sending Geevers monthly balance reports, Geevers would have refrained from taking any more of the money. Given Geevers's conduct, the District Court could reject this proposition as unlikely. Though he may not have expected to get it all, he could be presumed to have wanted to.

*Id.* Although Geevers was "free to come forward with evidence to demonstrate that he actually intended something less," *id.*, he failed to do so. Thus, the Third Circuit concluded, the district court did not clearly err in including the full amount of the deposited checks in Geevers's intended loss calculation. *Id.*

**[4]** We agree with the approach of the Third and Eleventh Circuits. Absent evidence to the contrary, the district court may reasonably infer that the participants in a counterfeiting scheme intend to take as much as they know they can. Thus,

where the scheme involves using stolen checks as templates for counterfeiting, the face value of the stolen checks is "probative" of the defendants' intended loss, as it is the amount that the participants know is in the accounts from which they are drawing.[6] *See Geevers*, 226 F.3d at 194. The district court may not "mechanically assume[ ]" that the face value of the stolen checks is the intended loss, however. *Id.* Rather, it must consider the evidence, if any, presented by the defendant tending to show that he did not intend to produce counterfeit checks up to the full face value of the stolen checks.[7]

**[5]** Here, the district court reasonably inferred, based on the nature of the counterfeiting scheme and the fact that Santos

---

[6]The government emphasized Santos's continued *possession* of the stolen checks as evidence of his intent to cause loss up to their face value. This argument is misplaced. The district court did not find that Santos intended to cash the stolen checks themselves but rather that he used the stolen checks as templates for producing counterfeit checks. Given the nature of this counterfeiting scheme, then, the crucial point is not that Santos *possessed* the checks but that the checks gave him *knowledge* of amounts of funds in the bank accounts. Thus, the loss calculation would have been the same had Santos photocopied the stolen checks, as did the defendant in *Grant*, 431 F.3d at 761, or simply copied the account information and dollar values in a notebook and then discarded the stolen checks.

[7]The Third Circuit suggested the following example of how a defendant might show that his intended loss was less than the full amount:

> [I]f a man needed $10,000 for surgery for his wife and sought to acquire the sum by engaging in a check kite, he might make a worthless deposit of $50,000 in order to inflate his "balance" to a high enough level that the bank would honor a $10,000 check. Such a defendant would likely be able to demonstrate that his subjective intent was only to take $10,000.

*Geevers*, 226 F.3d at 194. Other evidence to support a finding that the defendant in a counterfeiting case did not intend to exploit the full amount might include: evidence that the defendant was no longer a part of the counterfeiting scheme; evidence that a long period of time had elapsed since the defendant had produced or cashed any counterfeit checks; or evidence that the defendant had destroyed or discarded his check-producing equipment and the stolen bank account information.

and Cowboy still possessed the materials and equipment for counterfeiting checks at the time their scheme was discovered, that Santos intended to cash as many counterfeit checks as he could, at least up to the amount of the stolen checks. The only evidence that Santos produced to show that he intended less than this amount was his own testimony at the evidentiary hearing that he and his co-conspirators planned to take only $2,000 to $3,000 from each account. The district court explicitly discredited Santos's testimony on this point, however, and we "give special deference to the district court's credibility determinations." *United States v. Haswood*, 350 F.3d 1024, 1028 (9th Cir. 2003). Accordingly, we hold that the district court did not clearly err in using the full face value of the stolen checks to calculate Santos's intended loss.

Santos argues that a finding of intent must be based on the defendant's affirmative acts and that here the only affirmative steps taken were the creation of the counterfeit checks. Thus, he contends, his intended loss should be the face value of the counterfeit checks actually produced, not the face value of the stolen checks. We disagree. The government is not required to produce direct evidence of the defendant's intent; rather, it may provide circumstantial evidence from which the district court can draw reasonable inferences. *Cf. In re Slatkin*, No. 06-56334, ___ F.3d ___, ___, 2008 WL 1946739, at *3 (9th Cir. May 6, 2008) (explaining that because "direct proof of fraudulent intent is rarely available[,] . . . courts allow a finding of fraudulent intent based on circumstantial evidence"). Here, the government presented evidence that Santos and his cohorts were using the information from the stolen checks to produce counterfeit checks and recruiting others to cash them, and that they still possessed the check producing materials at the time their scheme was discovered. It was reasonable for the district court to infer from this evidence that they would have continued to produce and cash counterfeit checks had they not been caught. To restrict the district court's loss calculation to the face value of the counterfeit checks would require the court to assume that Santos and his associates

would not have produced or attempted to cash any more counterfeit checks than those that had already been made, even if they had never been caught. Not only is such a circumstance unlikely, but it is belied by the fact that Santos and Cowboy produced a new counterfeit check for Laurane Ivey on the very morning that their scheme was discovered.

**[6]** In sum, we hold that, absent countervailing evidence showing that the defendant intended to take less, a district court may reasonably infer, for the purposes of calculating intended loss under U.S.S.G. § 2B1.1(b)(1), that a participant in a counterfeiting scheme intends to take up to the full face amount of the stolen checks on which the counterfeit checks are based. Given the nature of Santos's counterfeit scheme, as well as the lack of evidence that he intended to stop short of the full face amount, the district court did not clearly err in finding that Santos intended to cause loss in the amount of $229,000, the face value of the stolen checks.

AFFIRMED.