**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

              v.

ISRAEL DEL TORO-BARBOZA,
          *Defendant-Appellant.*

No. 10-50487

D.C. No.
3:09-cr-03601-
W-1

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

              v.

ADIN DEL-TORO-BARBOZA,
          *Defendant-Appellant.*

No. 10-50491

D.C. No.
3:09-cr-03601-
W-2

OPINION

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, Senior District Judge, Presiding

Argued and Submitted
December 6, 2011—Pasadena, California

Filed March 14, 2012

Before: John T. Noonan, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

Haring P. Raghupathi (argued), Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant Israel Del Toro-Barboza.

Andrew K. Nietor (argued), San Diego, California, for defendant-appellant Adin Del Toro-Barboza.

Daniel E. Butcher (argued), Laura E. Duffy, and Bruce R. Castetter, Office of the U.S. Attorney, San Diego, California for appellee United States.

**OPINION**

GOULD, Circuit Judge:

Adin and Israel Del Toro-Barboza ("Defendants") appeal their convictions for bulk cash smuggling under 31 U.S.C. § 5332 and failure to file reports on exporting monetary instruments under 31 U.S.C. § 5324. Border agents found a bag containing $500,000 in cash in a box under a sheet in the back of defendants' van when they were making an early morning border crossing. No declaration of possession of cash exceeding $10,000 had been made. Although defendants asserted they had no knowledge this money was in their van, they were charged with cash smuggling and not filing required reports about exporting money, and were convicted after a four-day jury trial. The district court sentenced Israel to 46 months imprisonment and Adin to 41 months. Defendants appeal their convictions and sentences, contending that there was insufficient evidence to convict, that there was

instructional error, that their convictions violated the double jeopardy clause, that the indictments should have been dismissed because the government had destroyed evidence, that prosecutorial misconduct and false comments in argument give them a right to new trial, that there was cumulative error, and that the district court misapplied the sentencing guidelines. We reject all these contentions, and affirm.

## I.   Background

Defendants worked for their parents who run a shoe store in Ensenada, Mexico. They regularly drove to Southern California to pick up merchandise from suppliers, which they would take back to Mexico for their parents and other merchants. One seller of merchandise in San Ysidro, California, Jesus Reynosa, testified that Adin came to his store about every two to three weeks to pick up shoes for merchants in Mexico. On September 10, 2009, Adin went to Reynosa's business and picked up a box for a merchant in Mexico.

Two days later, on September 12, 2009, at around 1:30 a.m., Defendants were stopped at the Otay Mesa port of entry as they tried to cross the border from the United States to Mexico. They were driving a white Chevrolet Astro registered to Adin (Israel was driving, and Adin was the passenger). Officers Goulart and Parker and Agent Silva conducted Defendants' stop and search. According to Officer Goulart, traffic was slow, which is not unusual because Otay Mesa is a slower port of entry than San Ysidro. Officer Goulart asked Defendants if they were carrying over $10,000 in cash, and they responded that they were not. Israel was asked whether or not he had any cash at all on his person, to which he responded, "no." No one asked Adin whether he had any cash on his person. There are signs posted in English and Spanish telling travelers that currency over $10,000 must be declared to U.S. Customs.

While speaking to Defendants, Officer Goulart noticed that there was a black sheet covering something in the back of the

van. He asked Israel what was in the van, and Israel responded that it contained boxes of shoes. When asked why the black sheet was covering the boxes, Israel said that it was so Mexican customs officials would not see the boxes. Defendants' brother, Jose Angel Del Toro-Barboza, testified that, when importing merchandise into Mexico, they used the sheet so Mexican officials would not stop them at the Mexican border. If stopped by Mexican officials, the delay was lengthy and involved paying unpredictable taxes. This tax is also why they always carry cash on them as they cross between the borders.

Defendants were sent to the secondary inspection area and were asked to stand by a fence while the border patrol officers searched the van. The van was filled with about 38 brown cardboard boxes of varying sizes, all sealed. There were names written on the boxes. Officer Goulart inspected one box and found shoes. In other boxes he also found hair extensions and paint ball guns. Officer Parker pulled one box out of the van because it was significantly heavier than the others around it. Officer Goulart testified that he saw no writing on that box at all and that it was sealed. Officers opened the box and found a black duffel bag, which contained large bundles of U.S. currency. The duffel bag contained $500,087 in cash.

Defendants were arrested. One cell phone was found on Israel and two were found on Adin. There were four missed calls that morning on one of Adin's phones—at 2:13, 2:14, 2:21, and 2:26 a.m.—all from the same Mexican number. Israel's phone also had one incoming call at 2:10 a.m. There was no evidence presented as to whether the calls to both phones were from the same number. Israel had $943 in cash on him, and Adin had $340 in cash.

Defendants were indicted on September 30, 2009. Count One charged them with violating 31 U.S.C. §§ 5332 and 5316 (bulk cash smuggling). Count Two charged them with violating 31 U.S.C. §§ 5324(b)(1) and (c) and 5316 (evading

reporting requirements). Both defendants were also indicted on an aiding and abetting theory. Section 5316 creates a requirement to report currency but attaches no criminal penalty for failing to do so. Sections 5332 and 5324 incorporate § 5316 and criminalize the failure to report.

Before trial, Defendants moved to preserve the box containing the money and the money found therein. The district court granted the motion on November 23, 2009. Defendants then filed motions to dismiss because the currency and box were not preserved. On January 25, 2010, the district court held a hearing on the motions to dismiss, and denied the motions, concluding that the evidence was not exculpatory.

During the trial, Special Agent Cornwall testified that there were no markings on the box that had contained the money, but he did not pick it up to inspect it. Special Agent Cornwall testified that he did not view the box as holding any evidentiary value. Officer Goulart testified that the box with the money was the only box with no writing.

A jury trial commenced on March 2, 2010 and lasted four days. After the government concluded its case-in-chief, Defendants moved for a judgment of acquittal under Rule 29, and they renewed their motions after the defense rested. The district court denied these motions. The jury returned a verdict of guilty on all counts as to both defendants. The district court sentenced Adin to 41 months on each count, to be served concurrently, and three years of supervised release. It sentenced Israel to 46 months on each count, to be served concurrently, and three years of supervised release.

## II.  Sufficiency of the Evidence

### A.

Defendants argue that there was insufficient evidence to support their convictions under §§ 5324 and 5332 because,

not knowing the bag of money was hidden in the van, they did not have the specific intent the statutes required. We review de novo a district court's determination that sufficient evidence supports a conviction. *United States v. Tatoyan*, 474 F.3d 1174, 1177 (9th Cir. 2007).

To satisfy due process in the conviction of a defendant, there must be "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Given the challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc).

To apply this standard, we follow a two-step approach. First, all evidence must be viewed in the light most favorable to the prosecution, and, when "faced with a record of historical facts that supports conflicting inferences," a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *see also Nevils*, 598 F.3d at 1164. Second, looking at the evidence in this manner, we must determine whether the evidence is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Nevils*, 598 F.3d at 1164. "At this second step, however, a reviewing court may not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt, only whether *any* rational trier of fact could have made that finding." *Nevils*, 598 F.3d at 1164 (internal quotations and citations omitted).

## B.

**[1]** Count One of the indictments charged Defendants with bulk cash smuggling under § 5332, which states:

> Whoever, with the intent to evade a currency report-ing requirement under section 5316, knowingly con-ceals more than $10,000 in currency or other monetary instruments . . . in any conveyance . . . and . . . attempts to transport or transfer [it] from a place within the United States to a place outside of the United States . . . shall be guilty of a currency smug-gling offense.

§ 5332. Section 5316 requires a person who knowingly trans-ports monetary instruments of more than $10,000 across the border to file a report. A defendant "need only have the 'intent' to violate § 5316 to be guilty of bulk cash smug-gling." *Tatoyan*, 474 F.3d at 1179. This requires only that the "defendant act deliberately and with knowledge." *Id.* (internal quotations and citations omitted).

Count Two of the indictments charged Defendants with intent to evade a currency reporting requirement under § 5324(c), which provides that "[n]o person shall, for the pur-pose of evading the reporting requirements of section 5316 . . . fail to file a report required by section 5316, or cause or attempt to cause a person to fail to file such a report . . . ."[1]

**[2]** Both crimes are specific intent crimes and are commit-ted only where Defendants knew of the reporting require-

---

[1]Count Two also charged Defendants with violating § 5324(b)(1), and the judgments reflect convictions for both §§ 5324(b)(1) and (c). Appel-lees concede that at trial they pursued a theory of liability only under § 5324(c). We therefore instruct the district court to correct the judgments to reflect that the convictions under Count Two were only for a violation of § 5324(c).

ments and knew that they were transporting more than $10,000 in cash. Defendants argue that although evidence supported that they knew they were transporting contraband, there was insufficient evidence to prove that they knew the contraband was more than $10,000 in cash because no logical inference can be made that they knew they were transporting money. We disagree.

In *Juan H. v. Allen*, a fifteen-year-old was convicted of first-degree murder and attempted murder on an aiding and abetting theory when his brother shot and killed a man and shot at another man he thought had earlier that evening fired shots at his family's trailer. *Juan H. v. Allen*, 408 F.3d 1262, 1266-69 (9th Cir. 2005). We held that the evidence was insufficient to show that Juan H. knew his brother planned to commit murder, intended to encourage his conduct, and affirmatively acted to aid the murders. *Id*. at 1276. After the shooting, Juan H. had fled from the scene to his parents' trailer, and, when questioned by the police, he gave a false alibi stating he had been in the trailer during the shooting. *Id*. at 1277. The California Court of Appeal made the determination that the untrue statements Juan H. made to the police reflected consciousness of guilt. *Id.* We held that this was speculative conjecture, because although "we must draw all reasonable inferences in favor of the prosecution, a 'reasonable' inference is one that is supported by a chain of logic, rather than . . . mere speculation dressed up in the guise of evidence." *Id.* There was no evidence of Juan H.'s motive or intent to help his brother, either direct or circumstantial. *Id.* at 1279.

**[3]** Here, though there was no direct evidence showing that Defendants knew they were transporting more than $10,000 in cash, there was sufficient circumstantial evidence, and there was a plausible chain of logic to support the jury's verdict convicting appellants. The evidence showed that both defendants had possession of the vehicle—Israel as the driver and Adin as the registered owner. Adin was the passenger

when the border was attempted to be crossed, but Adin drove the van and had picked up boxes two days before the stop at the border. Those boxes were in the van when it was stopped and searched at the border, showing that he had some degree of control over the contents of the van.

**[4]** There was also circumstantial evidence from which a jury reasonably may have inferred that Defendants knew they were transporting more than $10,000 in cash. An inference is reasonable where it is "supported by a chain of logic, which is all that is required to distinguish reasonable inference from speculation." *U.S. v. Begay*, ___ F.3d ___, 2011 WL 94566, at *5 (9th Cir. Jan 12, 2011) (en banc) (internal quotations omitted). Here, a rational jury could reasonably have accepted the prosecution's argument that a person would not be expected to trust someone safely to transport that large amount of money, a half million dollars, without telling the Defendants that the box placed in the van was extremely valuable. Moreover, a jury could reasonably have concluded that Defendants knew that the box contained contraband because Defendants placed the box containing the money in the van, the box was the only unmarked box in the van, Defendants had attempted to conceal the boxes from the border officers with a black sheet, they did not tell the officers they were transporting items other than shoes, they crossed the border in the middle of the night instead of at a normal business hour, and a person or persons called Defendants several times in a matter of minutes in the middle of the night after they were delayed for search at the border. Given the high probability that Defendants knew they were smuggling extremely valuable contraband in the box, the jury could therefore have reasonably concluded that the Defendants knew the nature of that contraband. There is no logical reason why the smugglers would not have informed the Defendants that the box contained a half million dollars in cash (rather than, for example, illegal drugs), and indeed, the Defendants offered no explanation to rebut this possibility. Therefore, a chain of logic could

lead a rational jury to conclude that the Defendants knew that they were transporting over $10,000 in their van.

The facts here are circumstantial, but a case such as this rarely has direct evidence. Viewing all evidence in the light most favorable to the prosecution, and giving all reasonable inferences to the government in view of the conviction, a rational jury could believe that Defendants knew there was over $10,000 of cash in their car. It is true, as Defendants argue, that the owner of the money might have refrained from telling Defendants about the contents of the box and that it might have been placed in their van without their knowledge. An innocent explanation is in the realm of the possible. We have previously said, however, "that the mere fact that evidence submitted by the government is wholly susceptible to innocent explanations . . . is not enough to reverse a conviction on appeal." *United States v. Goyal*, 629 F.3d 912, 919 (9th Cir. 2010) (internal quotations and citations omitted). The evidence submitted, viewed in the light most favorable to the government, and with all reasonable inferences given it, must be sufficient to prove the elements of the crimes beyond a reasonable doubt, but that does not mean beyond all conceivable doubt. We cannot say that no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.

## III.   Jury Instructions

Defendants jointly argue that the district court did not give the jury any instructions on the elements of Count Two, which charged them with violating §§ 5324(b) and (c). Adin alone challenges the district court's decision not to give a "theory of the defense" instruction that he sought.

## A.   Elements of § 5324

Defendants challenge the district court's instruction on Count Two, arguing that the jury was not instructed on any

element of § 5324(c).[2] Due process requires the government to "prove all the elements of a crime beyond a reasonable doubt." *United States v. Delgado*, 357 F.3d 1061, 1067 (9th Cir. 2004). "A jury instruction cannot relieve the Government of this burden." *Id.*

The instructions given to the jury on Count Two were taken directly from the Defendants' jointly proposed jury instructions, and Defendants did not object at trial. We review for plain error where no objection has been made to the omission of an essential element of an offense in the charge to the jury. *United States v. Lindsey*, 634 F.3d 541, 554-55 (9th Cir. 2011). Under plain error review, we reverse when there is (1) an error (2) that is plain and (3) that affects substantial rights. *United States v. Alghazouli*, 517 F.3d 1179, 1188 (9th Cir. 2008). Even if there is a plain error that affects substantial rights, "we should exercise our discretion to reverse [the] conviction[s] only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotations omitted).

Defendants argue that the court instructed only on the elements of § 5316, for which there is no criminal penalty, and did not instruct on any elements of § 5324(c). The district court told the jury that defendants were charged in Count Two of the indictments "with failure to report exporting monetary instruments in violation of section 5316(a) of Title 31 of the United States Code." Section 5324(c) attaches criminal penalties to violations of § 5316, stating that "[n]o person shall, for the purpose of evading the reporting requirements of section 5316 . . . fail to file a report required by section 5316 . . . ." § 5324(c). Section 5316 requires a person to file a report when the person knowingly transports or is about to transport

---

[2]As discussed *supra* Part II, Defendants also argue that no instructions were given to the jury regarding § 5324(b)(1). The government has conceded this fact, and we instruct the district court to amend the judgments to remove any references to § 5324(b)(1).

more than $10,000 from a place in the United States to a place outside the United States. To be guilty of violating § 5324(c), a person must (1) knowingly be about to transport more than $10,000 in cash over the U.S. border, (2) know of the reporting requirement, and (3) intentionally evade the reporting requirement.

**[5]** The district court instructed the jury on all three of these described elements. Specifically, it instructed the jury that to find Defendants guilty of Count Two, the government had to prove beyond a reasonable doubt that:

> First, the defendant knowingly was about to transport more than $10,000 in United States currency from a place in the United States to or through a place outside the United States; second, the defendant knew that the report of the amount to be transported was required to be filed with the Secretary of the Treasury; and third, the defendant willfully failed to file such a report.

Although this phrasing did not exactly track the language of § 5324(c), the district court in substance instructed the jury on the elements of § 5324(c). There was no plain error in these jury instructions, as to which defendants had not objected.

## B. Adin's Proposed Instruction

Adin argues that the district court erred by rejecting his proposed instruction on the theory of the defense. We review de novo the district court's instructions to determine if they adequately covered the defense's theory. *United States v. Tucker*, 641 F.3d 1110, 1122 (9th Cir. 2011).

Although a defendant may ask the court to instruct the jury on his theory of defense, and should get a suitable instruction if the theory is supported by law and some evidence, a court may reject a defendant's requested instruction if other instruc-

tions reasonably cover the theory of the defense. *Id.* "So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion." *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir. 1985).

Defendants' proposed instruction read:

It is Israel and Adin Del Toro's theory of defense that they had no knowledge of the currency concealed in the duffle bag inside a box in the van they were driving. Rather, they believed that the thirty or more boxes they were transporting in the van contained shoes, clothes, and other legitimate merchandise. If after considering all of the evidence in this case, you find that the government has failed to prove beyond a reasonable doubt that Israel and Adin Del Toro knew that there was over $10,000 of currency hidden in the van, then you must find them not guilty on all counts.

Adin argues that, although the instructions given to the jury required it to find that he knowingly transported more than $10,000 in currency, the instructions did not adequately impart the possibility that he would be not guilty if someone else had placed the currency in the van and he had no knowledge of its presence. We disagree.

**[6]** The jury instructions for both counts included a requirement that Defendants "knowingly" transported over $10,000. The district court also instructed the jury that the United States had the burden of proving each charge beyond a reasonable doubt, that "mere presence at the scene of the crime or mere knowledge that a crime is being committed is not sufficient unless . . . the defendant was a participant and not merely a knowing spectator." In fact, during deliberation, the jury sent a question to the judge that read: "What if someone believes the Del Toro's knew about the money, however,

also believe the prosecution did not prove it?" This shows that the jury fully understood that they had to find that Defendants knew about the money. We hold that the instructions given by the district court made clear that Defendants could not be found guilty if the jury did not find that they had known they were carrying more than $10,000 in cash. The defense's theory was reasonably covered by other instructions.

## IV.   Double Jeopardy

Defendants contend that because their convictions under §§ 5324(c) and 5332 are multiplicitous, these convictions violate the Double Jeopardy Clause of the United States Constitution. U.S. CONST. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"). Defendants did not raise this argument in the district court. "Where a defendant fails to raise the issue of multiplicity of convictions and sentences before the district court, we review the district court's decision for plain error." *United States v. Zalapa*, 509 F.3d 1060, 1064 (9th Cir. 2007).

**[7]** "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also United States v. Vargas-Castillo*, 329 F.3d 715, 719 (9th Cir. 2003). Even if the two counts are multiplicitous, where "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Tatoyan*, 474 F.3d at 1182 (quoting *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983)).

**[8]** The statutes here do not satisfy the *Blockburger* test. Both statutes have as elements: (1) that a defendant attempted to transport over $10,000 from the U.S. to a place outside the U.S., (2) that the defendant knew that a report was required, and (3) that the defendant acted with the purpose or intent of evading the requirements of § 5316. Section 5332 contains an additional element not in § 5324(c)—that the defendant conceal the money—but § 5324(c) contains no element not in § 5332. Therefore, under *Blockburger*, the statutes are multiplicitous.

**[9]** However, where two statutes proscribe the same conduct that would violate the Double Jeopardy Clause if charged in separate trials, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter*, 459 U.S. at 366. There is a rebuttable presumption that Congress does not intend to punish the same offense under two different statutes. *Id.* But where Congress' intent is clear, cumulative punishment is permissible in the same trial. *Id.* at 368. Here, Congress intended to provide for additional punishment. In its findings for § 5332 (bulk cash smuggling), Congress stated:

> The current penalties for violations of the currency reporting requirements are insufficient to provide a deterrent to the laundering of criminal proceeds. In particular, in cases where the only criminal violation under current law is a reporting offense, the law does not adequately provide for the confiscation of smuggled currency. In contrast, if the smuggling of bulk cash were itself an offense, the cash could be confiscated as the corpus delicti of the smuggling offense.

Pub. L. No. 107-56, Title III, § 371(a) (Oct. 26, 2001). Congress' purposes were to "(1) make the act of smuggling bulk cash itself a criminal offense; (2) to authorize forfeiture of any

cash or instruments of the smuggling offense; and (3) to emphasize the seriousness of the act of bulk cash smuggling." *Id.* at § 371(b). We conclude that Congress' intent was clear; it wanted to provide for two separate punishments for the same conduct. *See also Tatoyan*, 474 F.3d at 1182 ("Congress thus contemplated—and indeed welcomed—a scenario in which someone guilty of a reporting offense under § 5316 would also be guilty of a bulk cash smuggling offense under § 5332."). We hold that Defendants' convictions under §§ 5324 and 5332 do not violate the Double Jeopardy Clause.

## V.   Destruction of Evidence

Defendants argue that the government violated their due process rights when it did not preserve the box that contained the duffel bag and when the government deposited the cash found in Defendants' van before they could test the box and money for fingerprints. "Whether a defendant's due process rights were violated by the government's failure to preserve potentially exculpatory evidence is reviewed de novo." *United States v. Rivera-Relle*, 333 F.3d 914, 918 (9th Cir. 2003). We review factual findings, such as the absence of bad faith, for clear error. *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011).

**[10]** The Supreme Court has said that "when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld." *Illinois v. Fisher*, 540 U.S. 544, 547 (2004). However, the Supreme Court applies a different test if there is a "failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)). Instead, "the failure to preserve this 'potentially useful evidence' does not violate due process 'unless a criminal defendant can show bad faith on the part of the police.' " *Id.* at

547-48 (quoting *Youngblood*, 488 U.S. at 58). The applicability of the *Youngblood* bad-faith requirement depends on whether the evidence was material exculpatory evidence or simply potentially useful evidence. *Id.* at 549.

**[11]** Defendants argue that the government did not preserve the box in which the cash-filled duffle bag was found, and did not preserve the cash distinctly. The defendants contend that this evidence that was not preserved is materially exculpatory, and a defense resting on its loss or destruction requires no showing of bad faith. But the fatal weakness of this argument is that the exculpatory nature of the money or the box[3] was not apparent. This type of evidence, as in *Youngblood*, is not materially exculpatory but only potentially useful. To illustrate, in *Youngblood*, government officials did not preserve semen samples that could have eliminated the defendant as the perpetrator, but the Supreme Court held that a showing of bad faith was required because "[t]he possibility that the semen samples could have exculpated respondent if preserved or tested is not enough to satisfy the standard of constitutional materiality." *Youngblood*, 488 U.S. at 56 n.*.

Because the evidence was not materially exculpatory, Defendants were required to show bad faith. The district court determined there was no bad faith. Defendants argue this was in error because the district court had issued an order for the preservation of evidence and, in violation of that order, the government destroyed the evidence. But the box was lost before any motions were made. From the testimony it appears that the box was abandoned the night of Defendants' attempted border crossing because it was seen as unimportant. Testimony during trial shows that as events unfolded no one present considered the box to have any evidentiary value.

---

[3]Defendants contended that the box was materially exculpatory because a sealed box would show Defendants did not know its contents. But the record shows that border agents opened the box at the border, so it could not have shown anything more than at one point it was sealed.

Special Agent Cornwall testified that he did not view the box as holding any evidentiary value. Agent Goulart testified that the last time he remembered seeing the box was at the secondary area. Officer Parker testified that the last time he remembered seeing the box was at the secondary lot when they took the duffel bag out of the box. Additionally, the money was deposited in the bank three days after the border crossing, long before the district court's preservation order on November 23, 2009. It might have been a better practice for the government to have retained both the box and the money for Defendants to test, but "[b]ad faith requires more than mere negligence or recklessness." *Flyer*, 633 F.3d at 916.

**[12]** A due process violation may arise where the government has intentionally destroyed evidence knowing it is of value for the defense against criminal charges. But where evidence is routinely destroyed or lost by the government with no knowledge that the evidence is likely exculpatory, and the evidence is later sought for testing, the destruction or loss of such evidence is not fundamentally unfair to a defendant and will not offend traditional notions of due process. We hold that in the circumstances here there was no due process violation caused by the challenged government destruction of evidence.

## VI.   Closing arguments

Defendants contend that statements made by the prosecutor in closing arguments require reversal. Defendants jointly argue that the prosecutor engaged in misconduct during the government's closing argument by disparaging the defense counsel and by putting words into Defendants' mouths that government witnesses had lied on the stand. Adin also argues prosecutorial misconduct for making improper references to a larger organization and by misstating the evidence.

A criminal conviction will not be overturned on the basis of a prosecutor's comments unless in context they affected the

fundamental fairness of the trial. *United States v. Young*, 470 U.S. 1, 11 (1985). "The trial Judge has broad discretion in controlling closing argument, and improprieties in counsel's arguments to the jury do not constitute reversible error unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Navarro*, 608 F.3d 529, 535-36 (9th Cir. 2010) (internal quotations and citations omitted).

Where Defendants objected at trial, we review a district court's determination that there was no prosecutorial misconduct for abuse of discretion, and we apply harmless error analysis. *United States v. Nobari*, 574 F.3d 1065, 1073 (9th Cir. 2009). Where Defendants did not object at trial, we review for plain error. *United States v. Geston*, 299 F.3d 1130, 1134 (9th Cir. 2002).

## A.   Disparaging Defense Counsel

Defendants argue that the prosecutor disparaged defense counsel in closing argument, affecting their right to a fair trial. Defendants challenge three sets of statements by the prosecutor. First, the prosecutor said, "The government is not in this for a game. This is a very serious offense . . . and the defense wants to make this into a game?" Second, he said, "You heard me objecting a couple of times where [defense counsel] tried to slip in some stuff." Finally the prosecutor compared the Defendants' defense to the Wizard of Oz, stating that the defense counsel was telling the jury to "pay no attention to the evidence" and said, "Don't let them pull the Wizard of Oz trick on you, ladies and gentlemen. Don't let them distract you with the smoke, and you get distracted by the facts." Defendants objected, without success, to the first two statements, but there was no objection to the third challenged statement.

**[13]** We conclude that the district court did not abuse its discretion on the first two statements. They did not render the

trial fundamentally unfair. The prosecutor's remarks stating that the trial was "not a game" did not make the trial unfair both because of the truth that a criminal trial is not a game, and because such comments can be seen as a reasonable response to the argument that had just been made by defense counsel. Defendants in their closing argument had analogized the trial to a game, referring to a government witness and saying, "He is part of a team. He plays for that side." In circumstances where the defense has by analogy suggested the trial was like a game with a government witness on the government's team, it is not fundamentally unfair for a prosecutor to respond that the trial is not a game. "[T]hat a prosecutor's remarks were made in response to defense counsel's arguments, as an 'invited reply,' may justify the remarks." *United States v. McChristian*, 47 F.3d 1499, 1508 (9th Cir. 1995) (citing *Young*, 470 U.S. at 14-20). This does not give the prosecutor leeway to say anything at all in response. *See, e.g., United States v. Sanchez*, 659 F.3d 1252, 1256-57 (9th Cir. 2011). However, the statement here was not sufficiently inflammatory to constitute error offending due process so as to negate the trial and jury verdict.

**[14]** Second, the government's argument that defense counsel "tried to slip in some stuff" also does not amount to reversible error. The defense counsel was equally accusatory during its closing, accusing the prosecutor of giving the jury a "string of distractions," of putting spin on facts, and comparing the government's argument of evidence to "one of those chewy dog toy guns that you chew on, and it makes a lot of noise and it squeaks." The government's statements are not like those made in *Bruno v. Rushen*, where we expressed our disapproval of prosecutors' attacks on defense attorneys. 721 F.2d 1193, 1195 (9th Cir. 1983). "There the prosecutor tried to destroy the credibility of the defendant by implying that defense counsel fabricated the defendant's story and instructed him to repeat it on the stand." *United States v. Frederick*, 78 F.3d 1370, 1380 (9th Cir. 1996) (describing *Bruno*). The prosecutor's suggestion that the defense had

"tried to slip in some stuff" does not present a model of polite professionalism, but in context did not render the trial unfair.

**[15]** Because Defendants did not object to the Wizard of Oz comments made by the prosecutor, we review those comments for plain error. Those comments were similar to ones made in *United States v. Matthews*, 240 F.3d 806 (9th Cir. 2000).[4] There the prosecution insinuated that defense counsel was trying to hide the truth, referred to the defense as an "octopus squirting ink," and asserted that "they gotta hide all the facts, cloud the facts, throw up all kinds of dirt, squirt the ink." *Id.* at 819. We held that the remarks may have crossed the line, but that given the circumstances of the case, the remarks did not amount to plain error. *Id.*

The proper application of the protections given criminal defendants by the due process clause does not mean that every jarring or badly selected metaphor renders a trial fundamentally unfair. A criminal trial, whether it should be or not, in practice is more like a football or basketball game than like a pleasant tea or game of croquet. The prosecution and defense confront each other and there will be some contact in strong language that is not avoidable. We expect counsel on both sides to exhibit professionalism, but a trial will usually be a hard-fought contest. So long as the prosecutor's vigorous closing argument is within normal bounds of advocacy and does not render a trial fundamentally unfair, a jury's criminal conviction upon proper jury instructions, and without other supervening constitutional error, should not be upset by an appellate court.

### B.   Putting Words Into Defendants' Mouths

Defendants also argue that the prosecutor engaged in mis-

---

[4]*Matthews* was reversed en banc, but the en banc panel adopted the part of the panel opinion relevant here. *See* 278 F.3d 880 (9th Cir. 2002) (en banc).

conduct by putting words into their mouths by stating at closing that the defense said that government witnesses had lied on the stand. The prosecutor said: "So, Defense says, 'Well, perhaps the box may have had some markings on it.' So what they are saying, ladies and gentlemen, to you, is that these officers got on this witness stand and told you a story. They lied to you." Defense counsel objected to this, but on vouching grounds rather than prosecutorial misconduct. "[A] party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, but also by making the wrong specific objection." *United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990); *see also United States v. Sioux*, 362 F.3d 1241, 1245 n.5 (9th Cir. 2004). Therefore we review this for plain error. We will overturn a conviction because of statements in closing arguments for plain error only where the statement "undermine[s] the fundamental fairness of the trial and contribute[s] to a miscarriage of justice." *United States v. Gwaltney*, 790 F.2d 1378, 1386 (9th Cir. 1986) (quoting *Young*, 470 U.S. at 16).

A prosecutor may not question a defendant on the stand and ask him whether another witness was lying. *United States v. Greer*, 640 F.3d 1011, 1023 (9th Cir. 2011). However, that is not what happened here. Instead, during rebuttal, the prosecutor summarized the argument made by defense counsel. He did not summarize anything said by Defendants on the stand.

**[16]** The prosecutor's statement did not "undermine the fundamental fairness of the trial and contribute to the miscarriage of justice" because it was in rebuttal to defense counsel's statements. Before this statement by the prosecutor, defense attorneys commented on the government witnesses—implying the witnesses had lied. Defense counsel argued that the government witnesses had changed their stories, had said one thing but written another in the report, had a bias, had pressure to change their story, and that the testimony had changed 180 degrees. The responsive argument by the prosecutor summarizing the defense counsel's argument does not

undermine the fundamental fairness of the trial or contribute to a miscarriage of justice. There is no plain error.

## C. Improper References to an Organization

Adin next argues that, even though the district court granted a motion *in limine* to prevent any witness from testifying about possible sources of the money found in the van, the prosecutor in cross-examination and argument referred to the existence and involvement of a larger organization, and that this requires a new trial.

**[17]** In closing argument, the prosecutor referred to "the person or persons that were calling" and said, "That's somebody who has said 'my money better be in Mexico at 2 o'clock.' " But considering the prosecutor's comment in context, we see that Israel's counsel in her opening statement referred to "the person who was really responsible for that money." Adin's defense was that an unknown third party had "hidden cash inside the sealed box" and that Adin had unknowingly loaded it into the van. Defendants argued that others were involved and that these others had tricked Defendants into unknowingly transporting the cash. The prosecution simply argued, in response to the claims that a third party was responsible, that Defendants *knew* the third party. "[W]here the defendant opens the door to an argument, it is 'fair advocacy' for the prosecution to enter." *United States v. Falsia*, 724 F.2d 1339, 1342 (9th Cir. 1983). There was no error.

## D. False Statements

Adin argues that the district court erred in denying his motion for a new trial because the prosecutor made statements of fact not supported by the record during his opening, closing, and rebuttal arguments. We review the denial of a motion for a new trial for abuse of discretion and will only grant the motion in exceptional circumstances in which the evidence

weighs heavily against the verdict. *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

The prosecutor has acknowledged making a false statement of facts. During his closing argument, the prosecutor stated that both defendants denied having money on them, but the record reflects only that Israel was asked that question about having money, Adin was not. The prosecutor then had argued that because Adin lied about having money on him he also lied about not knowing he was transporting over $10,000 in cash. The district court held that this was an error, but it also determined that this was an honest mistake and not prosecutorial misconduct. The district court further held the mistake to be harmless and denied the motion for a new trial.

**[18]** The district court believed that Adin had received a fair trial despite the error. The court noted that Adin said he was not taking more than $10,000 out of the country, he heard the agents ask Israel if he had any money on him but didn't speak up that he did, there were four missed calls on his phone, he was the registered owner of the van, and the van crossed the border at an unusual time. In addition to this, the court determined any error was cured by its admonitions to the jury before opening statements, before closing argument, and during the course of instructions that the lawyers' statements were not evidence and that if the jury remembered facts differently, their memory should control. Here, there was sufficient evidence to support Adin's conviction. His trial was not perfect, but it was not fundamentally unfair. The misstatement by the prosecutor was not "so gross as probably to prejudice the defendant." *Navarro*, 608 F.3d at 535-36. Adin was convicted of knowingly trying to smuggle the $500,000 out of the U.S., not of lying about whether he had a few hundred dollars in his pocket. The district court's decision to deny the motion for a new trial was not an abuse of discretion.

## VII.   Sentencing

Adin argues that the district court erred in giving him a 14 level enhancement for loss under § 2B1.1. He also argues that

the court's failure to provide a two level adjustment for having a minor role in the crime was substantively unreasonable.

## A. Standard of Review

We review a district court's method of calculating loss de novo and the district court's determination of the amount of loss for clear error. *United States v. Santos*, 527 F.3d 1003, 1006 (9th Cir. 2008). "Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007).

## B. 14 Level Enhancement for Loss

A sentence for convictions under § 5332 is determined under U.S.S.G. § 2S1.3. Section 2S1.3 provides:

(a) Base Offense Level:

(1) 8, if the defendant was convicted under 31 U.S.C. § 5318 or § 5318A; or

(2) 6 plus the number of offense levels from the table in § 2B1.1 . . . corresponding to the value of the funds, if subsection (a)(1) does not apply.

Because subsection (a)(1) did not apply, the district court looked at the table in § 2B1.1, whose chart shows that for amounts more than $400,000, the offense level is increased by 14.

Adin's argument is that § 2B1.1 is a penalty for loss and that, in *United States v. Bajakajian*, the Supreme Court held that failure to report currency caused no loss to the public fisc and only caused a deprivation of the information that money

had left the country. 524 U.S. 321, 339 (1998). Because there was no loss, Adin argues, there could be no 14-level enhancement. We reject this argument.

First, the 14-level enhancement was applied not because of loss, but because the Guidelines incorporated the chart as a reference for the bulk cash smuggling guideline instead of reprinting the chart. This follows from the plain language of the sentencing guidelines.

**[19]** Second, as noted by the First Circuit, after *Bajakajian*, Congress enacted the USA PATRIOT Act, which defined the "new" crime of bulk cash smuggling at § 5332. *United States v. Jose*, 499 F.3d 105, 109 (1st Cir. 2007). The First Circuit in *Jose* noted that by enacting the bulk cash smuggling statute, Congress was demonstrating its "view that defendant's violation of the bulk cash smuggling statute constitutes a significant harm." *Id.* at 112. We agree.

**[20]** The 14-level enhancement was appropriate.

## C.  Minor Role Adjustment

Adin also contends that his sentence is substantively unreasonable because the district court should have decreased his Guidelines sentence by two levels because of what he characterizes as his "minor role." Under § 3B1.2, an offense level should be decreased by two levels if the "defendant was a minor participant in any criminal activity." U.S. Sentencing Guidelines Manual § 3B1.2(b) (2010). "The comments to the Guidelines clarify that a minor participant is one who 'plays a part in committing the offense that makes him *substantially less culpable* than the average participant.' " *United States v. Rodriguez-Castro*, 641 F.3d 1189, 1193 (9th Cir. 2011) (quoting U.S.S.G. § 3B1.2(b) cmt n.3(A)). The defendant bears the burden of proving that he is entitled to the downward adjustment based on his role. *Id.*

The district court stated that the minor role adjustment was not applicable under this offense because:

> [i]t's only the people that are taking it out of the country that are convicted of this offense. They were the principles that took it out of the country. Therefore, role just wouldn't apply, in my opinion. They can't be substantially less culpable than somebody else taking it out of the country, because there was nobody else taking it out of the country.

Adin points out that the Congressional findings related to § 5332 state that while bulk cash smugglers are important, they are "typically low-level employees of large criminal organizations, and thus are easily replaced." Pub. L. 107-56, Title III, § 371(a)(5), Oct. 26, 2001. But we need not decide whether in an appropriate case there might be a minor role determination in a case involving bulk cash smuggling. For here Adin had defended by asserting lack of knowledge at all of the money in the van, and had not urged that he was carrying it for a large organization. Even if there are cases involving this crime where there could be a proper application of the two level minor role adjustment, this is not such a case.

**[21]** Adin had the burden of showing that his role was minor, and he did not meet that burden. He provided no evidence showing there was a bigger organization or that he was carrying the cash for someone else. He presented no facts explaining his role in this offense. He did not give a post-arrest statement, did not testify at trial, did not discuss the offense with the Probation Officer who prepared the Presentence Report, and said nothing about his role at the sentencing hearing. Adin was the owner of the van, had driven the van and picked up some of the merchandise on his own before crossing the border, and his phone was the one that received four missed calls shortly after they should have crossed the border. The sentence was not substantively unreasonable. *See United States v. Garcia-Guitar*, 234 F.3d 483, 491-92 (9th

Cir. 2000) (upholding denial of minor role adjustment where defendant "fails to point to other more culpable participants").

## VIII. Cumulative Error

**[22]** Defendants both argue that there is cumulative error requiring dismissal. Whatever errors we have identified, these "isolated errors . . . do not support reversal in the aggregate." *United States v. Inzunza*, 638 F.3d 1006, 1025 (9th Cir. 2011).

## IX.   Conclusion

We AFFIRM the convictions and sentences, but REMAND to the district court and order it to amend the judgments to remove references to § 5324(b)(1).