MEMORANDUM *
Didier De Nier was convicted of five counts of wire fraud and one count of conspiracy to defraud the government in connection with the production of fraudulent batteries that De Nier’s company, Powerline, sold to the Department of Defense (“DOD”) to put in naval warships. As the parties are familiar with the facts, we do not recount them here. We affirm.
1. De Nier contests three of the district court’s evidentiary rulings—(1) sustaining the government’s hearsay objection that prevented De Nier from denying that he had confessed to knowingly participating in Powerline’s fraud, (2) allowing the prosecutor to interject his own credibility at trial by referencing his conversation with De Nier, and (3) admitting into evidence an email advertisement that De Nier had forwarded to a co-conspirator for “the most dangerous book in the world.” Assuming the district court erred in its evi-dentiary rulings (and it likely did), and that the errors reached constitutional dimension, the errors were harmless.
Under Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), where a trial error results in the infringement of a constitutional right, the government bears the burden to “prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” The court must decide whether a reasonable juror could have relied on the error in deciding the verdict. An error potentially infringing constitutional rights is harmless and does not require automatic reversal of a conviction when it has “little, if any, likelihood of having changed the result of the trial.” Id. at 22, 87 S.Ct. 824.
The evidence admitted legitimately against De Nier was voluminous. Testimony from several former Powerline employees showed that De Nier had knowingly participated in a scheme to defraud the government. Employees testified that De *842 Nier gave them fraudulent shipping labels for the batteries, taught them to assemble fraudulent batteries, instructed them to put the fraudulent labels on the fraudulent battery packs, explained how to cover markings on the batteries that would otherwise indicate they were fraudulent, and discussed with them that the batteries did not meet temperature requirements specified by the DOD. They also testified that De Nier was in regular contact with his employees and would check in every day while he was away. On cross examination, the government elicited potentially incriminating admissions from De Nier himself indicating that he knew about and was involved in the fraudulent activities. In light of this overwhelming evidence, any errors were harmless beyond a reasonable doubt.
2. De Nier also challenges the amount of loss used to calculate his sentence. In calculating loss under the sentencing guidelines, a district court need only make a “reasonable estimate of the loss, given the available information.” United States v. Ali, 620 F.3d 1062, 1074 (9th Cir. 2010). The court reviews the district court’s factual determination of the amount of loss for clear error. United States v. Del Toro-Barboza, 673 F.3d 1136, 1153-64 (9th Cir. 2012). The parties stipulated at trial to an exhibit calculating the total amount of money paid from DOD to Powerline as approximately $2.6 million. This was a sufficient basis for the court to use in estimating loss.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.