[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16098

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 27, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-20437-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERTO BOFFIL-RIVERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 27, 2010)

Before PRYOR and FAY, Circuit Judges, and QUIST,[*] District Judge.

FAY, Circuit Judge:

_____

[*]Honorable Gordon J. Quist, United States District Judge for the Western District
of Michigan, sitting by designation.

Roberto Boffil-Rivera appeals his conviction for making a false statement of material fact in a matter within the jurisdiction of a government agency, in violation of 18 U.S.C. § 1001(a)(2). On appeal Boffil-Rivera argues that the evidence was insufficient to sustain his conviction. Because the government presented evidence that (1) Boffil-Rivera intentionally lied about having "anything to do with . . . pistols," and (2) his false statement was material, the evidence was sufficient to sustain the conviction. Accordingly, we affirm.

## I. BACKGROUND

*A. Factual Background*

Boffil-Rivera is a Cuban immigrant who entered the United States illegally on October 20, 2007. He was apprehended by the United States Border Patrol and released from custody under an Order of Supervision pending a removal proceeding. The Order of Supervision, which was signed by Boffil-Rivera, required his compliance with all federal, state, and local laws, and to refrain from possessing firearms. In February 2008, Boffil-Rivera was granted parolee status pending legal permanent residence. Pursuant to his parolee status, he was issued a social security card, a temporary drivers license, and an employment authorization card permitting him to legally work in the United States. Despite Boffil-Rivera's parolee status, the conditions of the Order of Supervision remain applicable until

2

he becomes a legal permanent resident. As a Cuban national, Boffil-Rivera was permitted to apply for legal permanent residence after he had been in the United States for a year and a day. Thus, on the date of his arrest, Boffil-Rivera was not a legal permanent resident.

On May 7, 2008, Boffil-Rivera was a passenger in a car that was stopped by Immigration and Customs Enforcement ("ICE") agents. As the agents approached the stopped vehicle, the driver, Yamil Gonzalez-Rodriguez, knocked a holstered handgun off the center console with his elbow onto the floor behind the passenger seat. Boffil-Rivera never touched the weapon during the stop but immediately raised his hands and exited the vehicle pursuant to the ICE agents' orders. The firearm was later identified as a Kahr PM40.

During an inventory search of the car, Special Agent Sherry Cumming found a receipt for the firearm showing that it was purchased by the driver, Gonzalez-Rodriguez. SA Cumming also found photographs in the trunk of the car. Two of the photographs depicted Boffil-Rivera holding what appeared to be the firearm recovered at the scene of the arrest. During oral arguments, counsel agreed that it was in fact the same firearm. One photograph depicted Boffil-Rivera sitting on a bed holding the firearm. Another showed him inside Gonzalez-Rodriguez's car holding the firearm. On the back of one of the photos, in what the government

3

argued was Boffil-Rivera's handwriting, was a statement in Spanish: "this is my pistol to protect my life."

Boffil-Rivera was taken into custody and questioned by ICE agents. At the time of the interview, the agents were not aware of the pictures found in the trunk of the car. Boffil-Rivera waived his Miranda rights and spoke with the agents freely. Special Agent Legna Velez, a native Spanish speaker, spoke with Boffil-Rivera in Spanish and interpreted for another agent who was also present. SA Velez asked Boffil-Rivera whether "he had a weapon–any kind of weapon whatsoever." SA Velez testified that Boffil-Rivera stated "he didn't have anything to do with the weapon and he doesn't own any weapons." The agents asked Boffil-Rivera to write down his statement and he complied. Boffil-Rivera wrote in Spanish: "I Roberto Boffil do not have pistol nor drug nor I have anything to do with drugs or pistol. I do not sell drug or weapons. I don't have nothing to do with that, neither in Cuba nor in the United States."

B. Procedural Background

On May 20, 2008, Boffil-Rivera was indicted on two counts:

1.   That on or about May 7, 2008, he was an alien illegally and unlawfully in the United States and that he knowingly possessed a firearm in and affecting interstate commerce in violation of Title 18 U.S.C. § 922(g)(5)(A); and

2.   That on or about May 7, 2008, in a matter within the

4

jurisdiction of the Bureau of Immigration and Customs Enforcement of the United States Department of Homeland Security, he knowingly and willfully made a false, fictitious and fraudulent statement and representation as to a material fact, in that he denied ever having a firearm or anything to do with a firearm, when in truth and fact, as the defendant then there knew, the defendant did have a firearm in violation of Title 18 U.S.C. § 1001(a)(2).

Boffil-Rivera entered a plea of not guilty and the case proceeded to trial.

At trial, ICE agents testified regarding Boffil-Rivera's arrest, the discovery of the photographs, and his subsequent interview. At the close of the government's evidence, Boffil-Rivera filed a motion for judgment of acquittal on Count 1, pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Boffil-Rivera argued that as a parolee, he was not "illegally and unlawfully in the United States." Boffil-Rivera relied on regulations promulgated by the Bureau of Alcohol, Tobacco and Firearms ("ATF") – the agency tasked with enforcing § 922(g) – that define an "[a]lien illegally and unlawfully in the United States." 27 CFR § 478.11 states that "[a]liens who are unlawfully in the United States are not in valid immigrant, nonimmigrant or parole status."

Boffil-Rivera also moved for judgment of acquittal as to Count 2, arguing that his statement was not material to the investigation and was merely a "general denial of any criminal wrongdoing." The district court deferred ruling on Boffil-

5

Rivera's Rule 29 motions until after closing arguments.

While the jury was deliberating, the district court granted Boffil-Rivera's Rule 29 motion as to Count 1. The district court instructed the jury that they no longer needed to consider Count 1 and not to speculate as to why. The district court never expressly denied the Rule 29 motion as to Count 2 but stated that "it's up to the jury to decide if the statement given on May 7th was true or not . . . ." The jury returned a guilty verdict as to Count 2 and the district court sentenced Boffil-Rivera to a six-month prison term, which he had already served, a three-year term of supervised release, and a $100 assessment. This timely appeal followed.

## II. STANDARD OF REVIEW

We review the "sufficiency of the evidence *de novo*, viewing all the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007).

## III. DISCUSSION

A person who knowingly makes a materially false statement or representation in a matter within the jurisdiction of a branch of the government of the United States is subject to not more than five years imprisonment. *See* 18 U.S.C. § 1001(a)(2). "To sustain a conviction for violation of 18 U.S.C. section

1001, the government must prove (1) that a statement was made; (2) that it was false; (3) that it was material; (4) that it was made with specific intent; and (5) that it was within the jurisdiction of an agency of the United States." *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996). On appeal, Boffil-Rivera argues that the government failed to prove that (1) the statement was false, (2) he intended to deceive the ICE agents, or (3) the statement was material.

*A. Was the Statement False?*

"Falsity under section 1001 can be established by a false representation or by the concealment of a material fact." *Id.* at 524. Boffil-Rivera contends that he did not "have" the gun or any other weapon because Gonzalez-Rodriguez owned the firearm that was found in the car. However, ownership is not a requirement for possession. "Possession may be actual or constructive, joint or sole." *United States v. Gunn*, 369 F.3d 1229, 1234 (11th Cir. 2004). The government may establish constructive possession of a firearm by showing that the defendant "exercised ownership, dominion, or control" over it. *Id.* Thus, if Boffil-Rivera had dominion or control over the gun, his statement was false.

The arresting agent testified that he saw the gun sitting between Boffil-Rivera and the driver of the car. The government also introduced pictures of Boffil-Rivera holding the gun. Moreover, one of the pictures said "This is my pistol to protect my

7

life." Although there was evidence that Gonzalez-Rodriguez purchased the gun, a reasonable juror could have concluded that Boffil-Rivera and Gonzalez-Rodriguez possessed the gun jointly, given Boffil-Rivera's proximity to the gun and his statement of ownership on the photograph. Thus, there is sufficient evidence for a jury to conclude the statement was false.

*B. Did Boffil-Rivera Intend to Deceive the Agents?*

For purposes of the statute, the word "false" requires an intent to deceive or mislead. *See United States v. Lange*, 528 F.2d 1280, 1287 n.10 (5th Cir. 1976).[1] Boffil-Rivera insists that his statement was a general denial in response to a vague question and there was no intent to deceive or mislead the ICE agents. He argues that merely holding a gun for a picture is not equivalent to buying, selling, or shooting a gun, which he believed were the things the agents wanted to know whether he had done. The government contends that "the jury simply rejected Boffil's arguments regarding the evidence and inferred from the totality of the evidence that he intentionally lied about possessing the gun."

Given that Boffil-Rivera denied having anything to do with guns despite having held the gun for pictures and claiming ownership of it, a reasonable juror

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

could have concluded that Boffil-Rivera intentionally lied to ICE agents when they asked whether he had a gun. Thus, there is sufficient evidence for a jury to conclude that Boffil-Rivera intended to deceive the agents.

*C. Was the Statement Material?*

It is uncontested that conviction under § 1001 requires that the statement be "material" to the government inquiry, and that "materiality" is an element of the offense that the government must prove. Furthermore, as an element of the offense, the question of "materiality" must be submitted to the jury. *United States v. Gaudin*, 515 U.S. 506, 509, 115 S. Ct. 2310, 2313 (1995). Prior to *Gaudin*, there was a division of authority as to whether "materiality" was a question of law or a mixed question of law and fact. In fact, our own circuit precedent treated "materiality" as "a question of law for the court." *United States v. Lichenstein*, 610 F.2d 1272, 1278 (5th Cir. 1980). However, *Gaudin* makes it clear that "materiality" is a mixed question of law and fact, which must go to the jury.

> Deciding whether a statement is "material" requires the determination of at least two subsidiary questions of purely historical fact: (a) "what statement was made?" and (b) "what decision was the agency trying to make?" The ultimate question: (c) "whether the statement was material to the decision," requires applying the legal standard of materiality . . . to these historical facts.

*Gaudin*, 515 U.S. at 512, 115 S. Ct. at 2314.

In the instant case, the parties also agree on the definition of "materiality."

9

As the Supreme Court stated in *Gaudin*, "The statement must have a 'natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Id.* at 509, 115 S. Ct. at 2313 (quoting *Kungys v. United States*, 485 U.S. 759, 770, 108 S. Ct. 1537, 1546 (1988)). The government is not required to prove that the statement had actual influence. "The false statement must simply have the capacity to impair or pervert the functioning of a government agency." *Lichenstein*, 610 F.2d 1272, 1278*; see also United States v. Fern*, 696 F.2d 1269, 1273 (11th Cir. 1983). The statement does not have to be relied upon and can be material even if it is ignored and never read. *See United States v. Diaz*, 690 F.2d 1352, 1358 (11th Cir. 1982).

On appeal, Boffil-Rivera argues that his statement was not material because he was permitted to possess a gun, given that he was not "illegally and unlawfully in the United States." Moreover, he insists that even if he did lie about holding the gun on two occasions, the lie was, in fact, so trivial that it could not have possibly influenced the ICE investigation. However, at trial, SA Cumming testified that the executed Order of Supervision, which continued to govern Boffil-Rivera during his parole status, expressly prohibited his possession of a firearm. Boffil-Rivera failed to rebut the agent's testimony regarding the conditions of his release. The government argues that Boffil-Rivera's statement was made within the ambit of

10

Immigration and Customs Enforcement, who are ultimately in charge of immigration crimes in this country and that Boffil-Rivera was subject to certain immigration conditions, making his statement material to their investigation.

Because possessing a gun violated the conditions of his release, a reasonable juror could have concluded that Boffil-Rivera's statement was capable of influencing the agency's investigation. Thus, there is sufficient evidence for a jury to conclude that the statement was material.

## IV. CONCLUSION

For the foregoing reasons, the evidence was sufficient to sustain the jury's guilty verdict.

**AFFIRMED.**