[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12208

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SAMMIE LEE SIAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:21-cr-00048-JRH-BKE-1

_____

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Sammie Sias appeals his convictions for destroying, altering, or falsifying records in a federal investigation, in violation of 18 U.S.C. § 1519, and for making a false statement to an agent of the United States, in violation of 18 U.S.C. § 1001(a)(2). He presents three arguments on appeal. First, he argues that the district court erred in denying his motion for judgment of acquittal of the Section 1519 conviction because the government failed to prove that his deletion of electronic files satisfied the element of intentional destruction. Second, Sias argues that the district court erred in denying his motion for judgment of acquittal of the Section 1001 conviction because the government failed to prove that his statement to an investigating agent that he had turned over all electronic files in his possession met the element of falsity. Third, Sias argues that the district court erred in declining to address his claim for ineffective assistance of counsel as part of his motion for a new trial.

Because the district court did not err in denying his motions for judgment of acquittal or in declining to address his claim for ineffective assistance of counsel, we affirm.

## I.

Sammie Sias served as president of the Sandridge Community Association, which maintained the Jamestown Community Center in Augusta, Georgia. Beginning in March 2014, the county

disbursed $150,000 in Special Purpose Local Option Sales Tax ("SPLOST") funds to Sandridge for the improvement of the community center. Dr. Jacqueline Fason eventually succeeded Sias as the Sandridge president in 2019.

In July of that year, the FBI began investigating whether Sias misused the SPLOST funds for his personal benefit. On July 30, FBI special agent Charles McKee served Dr. Fason a subpoena for Sandridge's financial records. Because she knew Sias had maintained Sandridge's financial and organization documents on his laptop, Dr. Fason called Sias to read the subpoena aloud and request the relevant files, all while still in agent McKee's presence. At 5:50 p.m. on August 5, McKee served Sias with another subpoena for Sandridge's bank records.

A few days later, and after reviewing the documents Sias had provided to Dr. Fason in response to the subpoena, McKee determined that they were incomplete and inadequate. Accordingly, on August 9, the FBI executed a search warrant at Sias's residence for documents and electronic items related to the potential misuse of SPLOST funds. In an audio-recorded conversation after the search, McKee asked Sias whether the FBI now possessed all the relevant files and electronic devices, to which Sias answered in the affirmative.

McKee then began searching Sias's laptop. He noticed that a folder named "SPLOST VI" was last modified on August 5 at 6:05 p.m.—fifteen minutes after Sias was served with the subpoena.

And although McKee could see those documents had been accessed, he was unable to find the files on the device.

McKee then provided the laptop to Charles McStotts, an examiner with the FBI's computer analysis team, to locate files Sias deleted after he was served with the subpoena but before the FBI seized the laptop. McStotts testified at trial that Microsoft Windows automatically creates a Volume Shadow Copy ("VSC") to back up files even if they are deleted. McStotts used AccessData's Forensic Tool Kit ("FTK") software to view files in the VSC, where he located deleted items relevant to the community center's financial records. According to his review of the laptop, a thumb drive—which the FBI had not received—had last been connected to the laptop at 5:56 p.m. on August 5. Agent McKee testified that he spent several weeks combing through the over 7,400 deleted files recovered in the VSC, some of which had been rendered unintelligible by symbols and letters. At the conclusion of his review, McKee located 237 potentially relevant deleted files.

After a jury trial, Sias was convicted of one count of destroying, altering, or falsifying records in a federal investigation and one count of making a false statement to an agent of the United States for his August 9 statement to McKee that the FBI already possessed all relevant financial records. The district court denied Sias's Rule 29 motions for a judgment of acquittal after the government rested its case-in-chief and after the jury verdict. *See* Fed. R. Crim. P. 29(c).

After the verdict, Sias filed a *pro se* motion requesting new counsel, which was granted. He subsequently filed an ex parte affidavit alleging that in May 2020—approximately nine months after the subpoena—he provided his former counsel with a thumb drive containing all the deleted documents with instructions to turn it over to the FBI, and that his former counsel failed to do so, resulting in the criminal charges. Sias argued that counsel's deficient performance prejudiced him because he may not have been indicted but for the failure to turn over the thumb drive. Because the district court found that a Rule 33 motion for a new trial was an improper vehicle for raising an ineffective assistance of counsel claim, it denied Sias's motion.

This appeal followed.

## II.

We review a district court's denial of a motion for judgment of acquittal *de novo*. *United States v. Broughton*, 689 F.3d 1260, 1276 (11th Cir. 2012). We apply the same standard used in reviewing the sufficiency of the evidence, meaning that we view the facts and draw all inferences in the light most favorable to the government. *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002).

A district court's ruling on a motion for a new trial is reviewed for an abuse of discretion. *United States v. Brester*, 786 F.3d 1335, 1338 (11th Cir. 2015). Under this standard, we may reverse the denial only if the district court made a clear error of judgment or applied the wrong legal standard. *United States v. White*, 590 F.3d 1210, 1214 (11th Cir. 2009).

## III.

We will first consider Sias's arguments regarding his motions for judgments of acquittal as to both convictions. We will then turn to consider his claim for ineffective assistance of counsel.

## A.

To affirm the denial of a motion for judgment of acquittal, we "need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *Descent*, 292 F.3d at 706 (citation omitted). We consider "all evidence presented at trial when reviewing a denial of a Rule 29 motion made at the close of a defendant's case." *United States v. Thomas*, 987 F.2d 697, 705 (11th Cir. 1993).

Sias first argues that under the Ninth Circuit's decision in *United States v. Katakis*, 800 F.3d 1017 (9th Cir. 2015), the deletion of a computer file is not actual destruction under Section 1519 if the destruction can be undone without the use of forensic tools. Because McStott's testimony established that Sias's deleted files could have been recovered using the laptop's VSC, the FBI's decision to use the forensic software to locate the files did not indicate a sufficient degree of concealment necessary to support a conviction.

To find a defendant guilty of violating 18 U.S.C. § 1519, a jury must be satisfied beyond a reasonable doubt that the defendant: (1) knowingly (2) altered, destroyed, mutilated, concealed, or covered up a record or document (3) with the intent to impede,

obstruct, or influence a federal investigation. *See United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008).

In interpreting the conduct required to satisfy that second element—and because we do not have a case on point—the parties rely on the Ninth Circuit's decision in *Katakis*. There, the Ninth Circuit held that a defendant had not concealed documents within the scope of Section 1519 when he deleted ten emails containing incriminating evidence. 800 F.3d at 1030. For concealment to exist, "there must be some likelihood that the item will not be found in the course of a cursory examination (without using forensic tools) of a defendant's computer." *Id*. Still, the Ninth Circuit "emphasize[d] the limited nature of this holding," concluding that it was crucial that the defendant's actions merely moved the documents "from one file folder to another," enabling investigators to easily locate and recover the documents. *Id*.

We need not decide whether to adopt the Ninth Circuit's narrow reading of Section 1519 because, even under that reading, Sias's actions satisfied the element of actual concealment by creating "some likelihood" that the deleted files would not be found. *Id*. Many of the files he scrubbed from his laptop were permanently altered and rendered unreadable even with the use of forensic technology. True, the content of some deleted files could be recovered through alternative, non-forensic methods like the VSC. But even then, the recovery process was more time consuming and yielded less valuable information: McKee was forced to spend "weeks and weeks" sifting through the damaged recovered files for relevant

evidence, and it was impossible for him to determine the deleted files' original location on the laptop. Unlike moving an email from one folder to another easily accessed folder, Sias's deletion of these files was "more than merely inconvenien[t]." *Id.*

Because his actions damaged subpoenaed documents and significantly delayed a federal investigation, a reasonable factfinder could conclude that Sias altered, destroyed, mutilated, concealed, or covered up the documents in violation of Section 1519. *See Descent*, 292 F.3d at 706. The district court therefore properly denied Sias's motion for judgment of acquittal as to his Section 1519 conviction because there was sufficient evidence in the record to support the jury verdict. *See Jiminez*, 564 F.3d at 1284.

### B.

To find a defendant guilty of violating Section 1001(a)(2), a jury must be satisfied beyond a reasonable doubt that the defendant made a statement that was (1) false; (2) material; (3) made with specific intent; and (4) within the jurisdiction of an agency of the United States. *United States v. Boffil-Rivera*, 607 F.3d 736, 740 (11th Cir. 2010). Falsity can be established "by a false representation or by the concealment of a material fact." *Id.* (citation omitted). Materiality requires that the statement have a "natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed." *Id.* at 741 (cleaned up).

Sias challenges the sufficiency of his Section 1001 conviction, arguing that his statement to McKee that Sias had produced all

responsive material was accurate because the deleted files were still available to the government in his laptop's VSC. But as we concluded in the previous subsection, Sias's action of deleting the files destroyed the content of some of those files, meaning that even under Sias's theory of falsity, he had withheld responsive files from the FBI. And at the time he made the statement to McKee, Sias knew he had already deleted the files within minutes after receiving the subpoena, indicating his intent and belief that the deletions would prevent the FBI from locating the documents.

The jury was free to reject Sias's construction of the evidence at trial, and it did. And based on the record before us, we cannot say that "there is no reasonable construction of the evidence from which the jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Ifediba*, 46 F.4th 1225, 1242 (11th Cir. 2022). Because Sias's statement to McKee was sufficient to make out the element of falsity, the district court did not err in denying the motion for judgment of acquittal as to his Section 1001 conviction.

## C.

Upon a defendant's motion, a district court may vacate a judgment and order a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 contemplates "two grounds upon which a court may grant a motion for new trial: one based on newly discovered evidence . . . and the other based on any other reason, typically the interest of justice." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006).

Sias argues that his counsel was ineffective by allegedly not giving the FBI the documents Sias placed on a thumb drive nine months after being served the subpoena and that his counsel's ineffectiveness altered the outcome of the case. Had the FBI received the thumb drive, Sias may never have been indicted.

Sias's allegations obviously do not reveal "newly discovered evidence," so his argument must be that a new trial is necessary in "the interest of justice." *Id.* But a new trial would not solve the problem Sias identifies. The asserted error occurred pre-indictment. Under Sias's theory, there never should have been *any* trial. Whatever the merits of Sias's ineffective assistance argument may be, ordering a new trial under Rule 33 would not solve the problem he alleges.

In addition to Rule 33 being the wrong vehicle for Sias's argument, he also raises the ineffective assistance argument at an inappropriate time. Generally, we decline to "consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). On direct appeal, trial records are often "incomplete or inadequate" for litigating such claims. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Because the evidence introduced at trial is devoted to issues of the defendant's guilt or innocence, "the facts necessary to decide either prong of the *Strickland* analysis" are usually absent. *Id.* at 505. We therefore usually require such claims to be raised in a collateral

attack under 28 U.S.C. § 2255, "even if the record contains some indication of deficiencies in counsel's performance." *Id.* at 504.

It would be inappropriate for us to consider Sias's claim for ineffective assistance of counsel. The district court did not entertain the claim—a decision within that court's discretion—and the factual record, as it currently exists, is inadequate. The only evidence relevant to this ineffective assistance claim is Sias's post-trial, ex parte affidavit. We don't yet know Sias's former counsel's version of the story, which will bear on any ineffectiveness determination. And we have no information as to whether or how the FBI would have changed course after receiving a nine-months-late thumb drive from Sias's attorney, such that any prejudice analysis at this point would be entirely speculative. We therefore decline to address Sias's claim for ineffective assistance of counsel on direct review.

## IV.

**AFFIRMED.**